# EXHIBIT A



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

BIANCA JARVIS
    Vs.                                     C.A. No.       2013 CA 000033 M
GEORGETOWN UNIVERSITY MEDICAL CENTER et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge NATALIA COMBS GREENE
Date:  January 3, 2013
Initial Conference: 9:00 am, Friday, April 05, 2013
Location:  Courtroom 317
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001                                 Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms are also available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

A.J., a Minor, et al

_____
Plaintiff

vs.

Case Number    0000033-13

Christian Macedonia, M.D.

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Peter M. Villari, Esquire
_____
Name of Plaintiff's Attorney

161 Washington Street, Suite 400
_____
Address
Conshohocken, PA 19428
_____

610-729-2900
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ፡

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                    CASUM.doc



## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, D.C. 20001 Teléfono: (202) 879-1133

01-CV00000                          Demandante

                    contra

                                                    Número de Caso:

_____
                      Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                            Por: _____

_____
Dirección                                                    Subsecretario

                                            Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-682-2700) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

# Superior Court of the District of Columbia
### CIVIL DIVISION — CIVIL ACTIONS BRANCH

## INFORMATION SHEET

**0000033-13**

M.J., a minor, et. al.

vs.

Georgetown University Medical Center, et. al.

Case Number: _____

Date: _____

*Name:*

Peter M. Villari, Esquire

Firm Name:

Villari, Brandes & Giannone, P.C.

Telephone No.: 610-729-2900    Unified Bar No.: 973890

Relationship to Lawsuit

● Attorney for Plaintiff
○ Self (Pro Se)

Other: _____

TYPE OF CASE:  ○ Non-Jury    ○ 6 Person Jury    ● 12 Person Jury

Demand: $ _____    Other: _____

## PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No. _____ Judge _____ Calendar # _____

Case No. _____ Judge _____ Calendar # _____

NATURE OF SUIT:  *(Check One Box Only)*

**A. CONTRACTS**

| | | COLLECTION CASES |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 07 Personal Property | ☐ **14 Under $25,000 Pltf. Grants Consent** |
| ☐ 02 Breach of Warranty | ☐ 09 Real Property-Real Estate | ☐ *16* **Under $25,000 Consent Denied** |
| ☐ 06 Negotiable Instrument | ☐ 12 Specific Performance | ☐ **17 OVER $25,000** |
| ☐ **15** Other: | | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | ☐ 06 Other: |
| ☐ 07 Shoplifting, D.C. Code § 3441 | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 09 Harassment | ☐ 17 Personal Injury |
| ☐ 02 Alienation of Affection | ☐ 10 Invasion of Privacy | ☐ 18 Wrongful Death |
| ☐ 03 Assault and Battery | ☐ 11 Libel and Slander | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile | ☐ 12 Malicious Interference | ☐ 20 Other: |
| ☐ 05 Deceit (Misrepresentation) | ☐ 13 Malicious Prosecution | ☐ 2 1 Asbestos |
| ☐ 06 False Accusation | ☐ 14 Malpractice Legal | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☑ 15 Malpractice Medical | |
| ☐ 08 Fraud | ☐ 16 Negligence | |

**D. OTHERS**

**I.**
- [ ] 01  Accounting
- [ ] 02  Att. Before Judgment
- [ ] 04  Condemnation (Emin. Domain)
- [ ] 05  Ejectment
- [ ] 07  **Insurance/Subrogation**
  Under $25,000   Pltf.
  **Grants Consent**
- [ ] 08  Quiet Title
- [ ] 09  Special Writ (Specify)

- [ ] 10  T.R.O./Injunction
- [ ] 11  Writ of Replevin
- [ ] 12  Enforce Mechanics Lien
- [ ] 16  Declaratory Judgment
- [ ] 17  Merit Personnel Act (D.C.
  Code Title 1, Chapter 6)
- [ ] 18  Product Liability
- [ ] 24  Application to Confirm, Modify,
  Vacate Arbitration Award
  (D.C. Code 164315)

- [ ] 25  Other:
- [ ] 26  **Insurance/Subrogation**
  **Under $25,000   Consent Denied**
- [ ] 27  **Insurance/Subrogation**
  **Over $25,000**

**II.**
- [ ] 03  Change of Name
- [ ] 06  Foreign Judgment
- [ ] 13  Correction of Birth Certificate
- [ ] 14  Correction of Marriage
  Certificate

- [ ] 15  Libel of Information
- [ ] 19  Enter Administrative Order as
  Judgment [6-2713(h) or
  36-3 19(a)]
- [ ] 20  Master Meter (D.C. Code
  43-541, et seq.)

- [ ] 21  Petition for Subpoena
  [Rule 28-I(b)]
- [ ] 22  Release Mechanics Lien
- 23  Rule 27 (a)(I)
  (Perpetuate Testimony)

RECEIVED
Ci...        ...e
JAN 0 2 2013
Superior Court of the
District of Columbia
Washington, D.C.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | | |
|---|---|---|
| M.J., a minor, by and through Bianca Jarvis, his parent and natural guardian<br>1409 Nicholson Street<br>Hyattsville, MD 20785 | : | C.A. No. _____ |
| *Plaintiffs* | : | **JURY TRIAL REQUESTED** |
| | : | |
| vs. | : | |
| | : | |
| Georgetown University Medical Center, individually and/or doing business as Georgetown University Hospital c/o President, Georgetown University General Counsel 204 Healy, 37th and 0 Streets, NW Washington, DC 20057 | : | |
| -and- | : | |
| Georgetown University Hospital c/o President, Georgetown University General Counsel 204 Healy, 37th and 0 Streets, NW Washington, DC 20057 | : | |
| -and- | : | |
| Christian Macedonia, M.D. 8901 Wisconsin Avenue Bethesda, MD 20889 | : | |
| -and- | : | |
| Lori A. Picco, M.D. 2142 K Street NW, Suite 808 Washington, DC 20037 | : | |
| -and- | : | |
| Phyllis M. Rattey, R.N. 8012 Glenside Drive Takoma Park, MD 20912 | : | |
| *Defendants* | : | |

## COMPLAINT FOR MEDICAL MALPRACTICE

## JURISDICTION

1.    Jurisdiction of this Court is invoked pursuant to D.C. Code § 11-921.

2.     Plaintiff timely served a Notice of Intention to File Suit pursuant to D.C. Code § 16-2802 on the above-named defendants on or about September 22, 2008 and October 7, 2008 (as to defendant Hospital and Doctors) and August 15, 2012 (as to defendant Nurse), over ninety (90) days before the filing of this Complaint. True and correct copies of the Affidavits of Service of the aforesaid Notice are attached hereto as Exhibit "A."

## PARTIES

3.     At all times material hereto, Bianca Jarvis was and is an adult resident of Washington, DC. Currently, Bianca Jarvis is a resident of Hyattsville, MD.

4.     At all times material hereto, Bianca Jarvis was and is the parent and natural guardian of plaintiff, M.J., a minor, and brings this action on behalf of the minor-plaintiff.

5.     Defendant, Georgetown University Medical Center, individually and/or doing business as Georgetown University Hospital (hereinafter "Georgetown University Medical Center"), is a medical and health provider, hospital and/or organization providing obstetric and gynecological services, is a duly organized corporation existing under the laws of the District of Columbia, with a hospital/medical center located at 3800 Reservoir Road, NW, Washington D.C. 20007.  Plaintiffs are asserting a medical professional liability action against this Defendant.

6.     At all times material hereto, defendant Georgetown University Medical Center acted individually and/or by and through its agents, servants, workers and/or employees, including, but not limited to Christian Macedonia, M.D., Lori A. Picco, M.D., and other healthcare providers involved in Ms. Jarvis' care and treatment as described herein.

7.     Defendant, Georgetown University Hospital is a medical and health provider, hospital and/or organization providing obstetric and gynecological services and a duly organized corporation existing under the laws of the District of Columbia, with a hospital/medical center

located at 3800 Reservoir Road, NW, Washington D.C. 20007. Plaintiffs are asserting a medical professional liability action against this Defendant.

8.     At all times material hereto, defendant Georgetown University Hospital acted individually and/or by and through its agents, servants, workers and/or employees, including, but not limited to Christian Macedonia, M.D., Lori A. Picco, M.D., Phyllis M. Rattey, R.N., and other healthcare providers involved in Ms. Jarvis' care and treatment as described herein.

9.     Hereafter, defendant Georgetown University Medical Center and defendant Georgetown University Hospital shall be referred to collectively as defendant "Hospital."

10.     At all times material hereto, defendant Christian Macedonia, M.D. (hereinafter "Dr. Macedonia") was and is a physician allegedly licensed to practice medicine under the laws of the District of Columbia, holding herself out to the public as a physician specializing in obstetrics and/or gynecology, and at all relevant times did business and provided medical services at defendant Hospital. Plaintiff is asserting a medical professional liability action against this Defendant.

11.     At all times material hereto, defendant, Dr. Macedonia, acted individually and/or as the agent, servant, worker and/or employee of defendant Hospital, and was then and there acting within the course and scope of her employment, agency and authority.

12.     At all times material hereto, defendant Lori A. Picco, M.D. (hereinafter "Dr. Picco") was and is a physician allegedly licensed to practice medicine under the laws of the District of Columbia, holding herself out to the public as a physician specializing in obstetrics and/or gynecology, and at all relevant times did business and provided medical services at defendant Hospital. Plaintiff is asserting a medical professional liability action against this Defendant.

13.    At all times material hereto, defendant, Dr. Picco, acted individually and/or as the agent, servant, worker and/or employee of defendant Hospital, and was then and there acting within the course and scope of her employment, agency and authority.

14.    At all times material hereto, defendant Phyllis Rattey, R.N. (hereinafter "Nurse Rattey") was and is a registered nurse allegedly licensed to practice under the laws of the District of Columbia, and at all relevant times did business and provided medical services at defendant Hospital. Plaintiff is asserting a medical professional liability action against this Defendant.

15.    At all times material hereto, defendant, Nurse Rattey, acted individually and/or as the agent, servant, worker and/or employee of defendant Hospital, and was then and there acting within the course and scope of her employment, agency and authority.

## FACTS

16.    On November 1, 1998, at or about 1:30 p.m., at approximately 25 weeks gestation, Ms. Jarvis presented to defendant Hospital with complaints of abdominal spasms and spontaneous rupture of membranes.

17.    Upon information, Ms. Jarvis was at that time admitted to defendant Hospital so that she could be continuously monitored and her baby timely delivered in the event of infection and/or fetal distress.

18.    On admission, Ms. Jarvis's fetus was noted to have a baseline heart rate of 160-170s, with fair beat-to-beat variability.

19.    On admission, Defendants administered penicillin and erythromycin to Ms. Jarvis, but documented that there were no signs of chorioamnionitis.

20.    At this time, upon information, Defendants started Ms. Jarvis on terbutaline.

21.    At or about 6:50 p.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s with accelerations to the 170s, no decelerations and good variability.

22.    Ms. Jarvis was administered her first dose of betamethasone at or about 7:30 p.m.

23.    At or about 11:00 p.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 140s with accelerations to the 170s, no decelerations and good variability.

24.    At or about this time, it was noted that Ms. Jarvis was not showing any signs of chorioamnionitis.

25.    On November 2, 1998, upon information, Ms. Jarvis was continued on penicillin and erythromycin.

26.    At or about 4:10 a.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s with accelerations to the 170s, no decelerations and good variability.

27.    At or about this time, it was again noted that Ms. Jarvis was not showing any signs of chorioamnionitis.

28.    At or about this time, it was noted that Ms. Jarvis was not feeling any contractions.

29.    At or about 11:42 a.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 140s with accelerations to the 170s.

30.    At or about this time, it was again noted that Ms. Jarvis was not showing any signs of chorioamnionitis.

31.    At or about this time, it was noted that Ms. Jarvis was not feeling any contractions.

32.    At or about 2:12 p.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 140s with accelerations to the 170s.

33.     At or about this time, it was again noted that Ms. Jarvis was not showing any signs of chorioamnionitis.

34.     At or about this time, it was noted that Ms. Jarvis was not feeling any contractions.

35.     At or after this time, Ms. Jarvis was seen by the attending on duty, Gary S. Eglinton, M.D. (not a defendant), who reported that she had improved contraction frequency after taking the terbutaline.

36.     Dr. Eglinton further noted that there were no significant or ominous fetal heart rate decelerations.

37.     Dr. Eglinton ordered biophysical profiles (BPP) to begin the following day.

38.     At or about 4:18 p.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate of 160.

39.     At or about this time, it was again noted that Ms. Jarvis was not showing any signs of chorioamnioitis.

40.     At or about 6:00 p.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s with accelerations and no decelerations.

41.     At or about 7:30 p.m. on this date, Ms. Jarvis received a second dose of betamethasone.

42.     At or about 10:00 p.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 170s with accelerations and no decelerations.

43.     On November 3, 1998, at or about 4:00 a.m., Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 160s with accelerations and no decelerations.

44.     At or about this time, it was noted that Ms. Jarvis was not having any contractions.

45.     At or about 8:50 a.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s with no decelerations.

46.     At or about this time, it was noted that Ms. Jarvis was not having any contractions.

47.     At or about this time, it was again noted that Ms. Jarvis was not showing any signs of chorioamnioitis.

48.     At or about 3:50 p.m. on this date, Ms. Jarvis underwent a BPP and scored a 4 out of 8, with the non-stress test (NST) not being applicable.

49.     At this time, Ms. Jarvis' amniotic fluid index (AFI) was 2.2 and the fetal heart rate was 150.

50.     On November 4, 1998, at or about 8:00 p.m., Ms. Jarvis was seen by Dr. Eglinton, who noted that she had no contractions and no bledding.

51.     At or about this time, Dr. Eglinton recommended and/or ordered a repeat BPP given Ms. Jarvis' score of 4 out of 8 the previous day.

52.     At or about 11:40 p.m. on this date, Ms. Jarvis underwent another BPP and again scored 4 out of 8.

53.     At this time, Ms. Jarvis' AFI was 2.0.

54.     At this time, Ms. Jarvis' fetus was noted to have fetal heart rate of 150.

55.     On November 5, 1998, at or about 6:30 a.m., Ms. Jarvis' fetus was noted to have a baseline fetal heart rate of 150-160.

7

56.     At or about this time, it was noted that Ms. Jarvis was not having any contractions.

57.     At or about 10:07 a.m. on this date, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 160s.

58.     At or about this time, it was noted that Ms. Jarvis' BPP score of 4 out of 8 was appropriate for having preterm, premature rupture of membranes at 25 weeks.

59.     At or about 2:15 p.m., Ms. Jarvis underwent a cervical culture, which was positive for bacterial vaginosis.

60.     At this time, Ms. Jarvis was started on Flagyl.

61.     On November 6, 1998, at or about 6:15 a.m., Ms. Jarvis' fetus was noted to have a baseline fetal heart rate of 140-160.

62.     At or about this time, it was noted that Ms. Jarvis was not having any contractions.

63.     At or about this time, it was again noted that Ms. Jarvis was not showing any signs of chorioamnioitis.

64.     At or about 1:15 p.m. on this date, Ms. Jarvis underwent a NST, the results of which were reassuring and showed a baseline fetal heart rate of 160.

65.     At or about 7:00 p.m. through 7:55 p.m. on this date, Ms. Jarvis was placed on a fetal heart monitor, which showed a baseline fetal heart rate in the 150s-160s with variable decelerations and decelerations in the absence of contractions.

66.     Upon information, Dr. Picco was advised of Ms. Jarvis' fetal heart rate tracings.

67.     At or about 8:10 p.m. on this date, Ms. Jarvis complained of cramping and back pain and was placed on a monitor, which was unable to pick up any contractions.

68.    At or about 8:15 p.m., nursing notes indicate that Dr. Picco was notified of Ms. Jarvis' complaints and she ordered terbutaline 0.25 mg.

69.    At or about 8:35 p.m., nursing notes indicate that Ms. Jarvis was experiencing palpable uterine contractions every 4 minutes, that she was in pain and that Dr. Picco was notified.

70.    At or about 8:45 p.m., Ms. Jarvis was transferred to the Labor and Delivery unit.

71.    At or about 9:00 p.m., Dr. Picco noted that Ms. Jarvis was contracting every 2-3 minutes.

72.    At or about this time, Dr. Picco noted that Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s-160s with variable decelerations to 60 for 30 seconds with spontaneous recovery to baseline.

73.    At or about this time, Dr. Picco ordered and/or Nurse Rattery administered a bolus of lactated ringers to Ms. Jarvis and placed her on an oxygen.

74.    At or about this time, Dr. Picco ordered and/or Nurse Rattery administered a 6g bolus of magnesium sulfate and a continuous infusion at a rate of 2g/hour to Ms. Jarvis.

75.    At or about 9:11 p.m., Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s-160s with variable decelerations to the 130s.

76.    At our about 9:30 p.m., Dr. Picco noted that Ms. Jarvis' contractions were spacing out and that her fetus was not showing any decelerations in the fetal heart rate.

77.    At or about 9:35, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s-160s with variable decelerations to the 120s.

78.    At or about 9:55, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s-160s with variable decelerations to the 110s.

79.     At or about 10:00 p.m., Dr. Picco notes that Ms. Jarvis continued to contract every 3-5 minutes.

80.     At or about this time, Dr. Picco and/or Nurse Rattey increased Ms. Jarvis' continuous infusion of magnesium sulfate to a rate of 3g/hour.

81.     At or about this time, Dr. Picco noted that she discussed Ms. Jarvis' care with Dr. Macedonia and they planned to increase Ms. Jarvis' magnesium sulfate administration to 4g/hour in contractions continued.

82.     At or about 10:30 p.m., Dr. Picco notes that Ms. Jarvis continued to contract.

83.     At or about this time, Dr. Picco and/or Nurse Rattey increased Ms. Jarvis' continuous infusion of magnesium sulfate to a rate of 3.5g/hour.

84.     At or about this time, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s-160s with variable decelerations to the 90s-120s.

85.     At or about 10:45 p.m., Dr. Picco noted that Ms. Jarvis continued to contract every 2-5 minutes.

86.     At or about this time, Dr. Picco noted that Ms. Jarvis' fetus had a baseline fetal heart rate in the 150s with no accelerations and variable decelerations to the 120s for 15 seconds with spontaneous recovery to baseline.

87.     At or about this time, Dr. Picco and/or Nurse Rattey increased Ms. Jarvis' continuous infusion of magnesium sulfate to a rate of 4g/hour.

88.     At or about this time, Ms. Jarvis' fetus was noted to have a baseline fetal heart rate in the 150s-160s with late variable decelerations to the 90s-120s.

89.     At or about 11:40 p.m., Dr. Picco noted that Ms. Jarvis continued to contract.

90.     At this or about this time, the fetal heart rate showed repetitive late decelerations down to the 110s with slow recovery to baseline, decreased variability between contractions, and no accelerations.

91.     At or about this time, Dr. Picco noted that Ms. Jarvis' fetus was demonstrating fetal heart rate decelerations down to the 110s with every contraction with spontaneous recovery to baseline.

92.     At or about this time, Dr. Picco noted that Ms. Jarvis' fetus had decreased variability between contractions and no accelerations.

93.     At or about this time, Dr. Picco noted that she viewed the fetal heart tracings with Dr. Wylen (not a defendant), who agreed with her interpretation.

94.     At or about this time, Dr. Picco noted that she discussed Ms. Jarvis' condition with Dr. Macedonia, the attending physician.

95.     Upon information, defendants determined that Ms. Jarvis was in advanced labor and that her fetus should be delivered immediately via cesarean section.

96.     At or about this time, Dr. Picco noted that she discussed the plan for a c-section with Ms. Jarvis, who agreed.

97.     Upon information, defendants, Dr. Macedonia and Dr. Picco performed the delivery of Ms. Jarvis' baby, M.J.

98.     At or about 11:46 p.m., defendants discontinued the fetal heart monitoring.

99.     On November 7, 1998, at or about 12:15 a.m., Ms. Jarvis was administered an epidural.

100.    Upon information, after the epidural was placed, Ms. Jarvis was found to be completely dilated, completely effaced, and at a +2 station.

101.   Upon information, at or about that time, Defendants then decided to forego the cesarean section and proceed with a vaginal delivery.

102.   Upon information, defendants advised Ms. Jarvis to push which she did for fifteen (15) minutes.

103.   During this time, the fetal heart rate (by sonogram) showed terminal fetal bradycardia with decelerations down to the 70s.

104.   Defendants then decided to use forceps to help assist the extraction of the fetus.

105.   Defendants applied traction and delivered baby M.J. at or about 12:27 a.m.

106.   At birth, minor-plaintiff M.J. was blue with no respiratory effort or heart rate.

107.   At birth, minor-plaintiff M.J. had extensive bruising on his head, neck and chest.

108.   Following delivery, minor-plaintiff, M.J., was immediately intubated and admitted to the neonatal intensive care unit ("NICU") at defendant Hospital, where he remained for approximately sixteen (16) weeks.

109.   Upon information, staff at Defendant Hospital recorded the Apgar scores on the Obstetrics Summary. At 1 minute the score was 1 for color, and there was no score for heart rate, respiratory rate, muscle tone, or response to stimulation. At 5 minutes, heart rate was 2, respiratory rate was 1, and color was 1, for a total of 4. At 10 minutes, heart rate was 2, respiratory rate was 1, muscle tone was 1, response to stimulation was 1, and color was 1, for a total of six.

110.   M.J. was diagnosed with perinatal asphyxia, respiratory distress syndrome, and extreme prematurity.

111.   M.J. was noted to have bruises on his head, chest and neck.

112.    As a direct and proximate result of the hereinafter described individual, joint, several and/or alternative negligence and liability-producing conduct of defendants, minor-plaintiff M.J. now suffers from, among other things, permanent brain damage, permanent neurologic injuries, global developmental delay, and orthopedic injuries and other complications, all of which require a multitude of therapies, services and medical care.

113.    As a further direct and proximate result of the aforesaid conduct of defendants, minor-plaintiff M.J. has suffered and will continue to suffer from severe pain, suffering, discomfort, disability, disfigurement, emotional suffering, embarrassment, humiliation, physical and mental disabilities and loss of well-being and loss of life's pleasures.

114.    As a further direct and proximate result of the aforesaid conduct of defendants, minor-plaintiff M.J. has and/or may suffer a loss of earnings and/or earning capacity and an inability to engage in usual and customary duties, hobbies, work, obligations and/or responsibilities, and have and may suffer emotional upset and distress.

115.    As a further direct and proximate result of the aforesaid conduct of defendants, minor-plaintiff M.J. has and will continue in the future to be forced to expend money and incur obligations as a result of caring for and/or treating his permanent injuries and the results thereof.

**COUNT I**
**NEGLIGENCE**
**Plaintiff v. Defendants, Christian Macedonia, M.D., and Lori A. Picco, M.D.**

116.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein at length.

117.    The aforesaid injuries and damages of Plaintiffs were caused by the individual, joint, several and/or alternative negligence and carelessness of defendants, Christian Macedonia, M.D., and Lori A. Picco, M.D., which consisted of the following:

a.    Failing to timely, properly and/or adequately consider, order, recommend and/or perform a cesarean section and/or sooner delivery in light of Ms. Jarvis's clinical status, past and present history, complaints, signs, symptoms and/or related findings, as well as with respect to those of her fetus;

b.    Improperly evaluating, interpreting and/or assessing the significance of M.J.'s fetal heart rates and their impact on his delivery and/or well-being;

c.    Improperly proceeding with a vaginal delivery given the patients' clinical status, complaints, signs, symptoms, findings, evaluations, assessments, examinations, test results, study results, observations and/or monitoring;

d.    Reaching improper diagnoses and/or treatment plans in light of the clinical status, past and present history, examination results, test and study results, and/or conditions of Ms. Jarvis and/or her fetus;

e.    Unnecessarily delaying the diagnosis, care and/or treatment of Ms. Jarvis and/or the diagnosis, care, treatment and/or delivery of her fetus;

f.    Failing to timely, properly and/or adequately recognize, consider, avoid, assess and/or diagnose the possibility of fetal bradycardia and/or distress in light of the clinical status, past and present history, complaints, study and test results, signs, symptoms and/or related findings of Ms. Jarvis and/or her fetus;

g.    Failing to timely, properly and/or adequately diagnose the fetus as being at risk for and/or suffering fetal bradycardia, distress and/or neurologic injury;

h.    Failing to timely, properly and/or adequately recognize the risk associated with not timely, properly and/or adequately delivering Ms. Jarvis' fetus;

i.    Failing to timely, properly, and/or adequately assess, monitor, diagnose,

interpret, treat and/or respond to Ms. Jarvis' contractions and/or cervical change and the patterns and significance thereof, as well as the clinical symptoms of her fetus, under the circumstances;

j.    Failing to timely, properly and/or adequately assess, monitor, diagnose, interpret, treat and/or respond to Ms. Jarvis' complaints of pain, cramping and/or pressure and the patterns and significance thereof under the circumstances;

k.    Failing to timely, properly and/or adequately assess, monitor, diagnose, interpret, treat and/or respond to the fetal heart rate of Ms. Jarvis' fetus, and the patterns and significance thereof under the circumstances;

l.    Failing to timely, properly and/or adequately request, order, recommend, and/or perform continuous electronic fetal heart rate and/or contraction monitoring under the circumstances;

m.    Failing to timely come to and/or remain at Ms. Jarvis' bedside at the hospital to assess, diagnose, care for and/or treat her and/or her fetus;

n.    failing to timely, properly and/or adequately assess, diagnose, interpret, treat and/or respond to Ms. Jarvis's labor and the patterns and significance thereof;

o.    Failing to timely, properly and/or adequately prepare for delivery;

p.    Improperly ordering, recommending and/or performing a vaginal delivery of M.J. with forceps and traction under the circumstances.

q.    Failing to timely, properly and/or adequately determine, note, evaluate and/or consider Ms. Jarvis's past and present medical history, examinations, test results, signs, symptoms, conditions, diagnoses, and/or plans of care;

r.      Failing to timely, properly and/or adequately recognize, interpret, diagnose and/or respond to the significance of the patients' clinical status, complaints, signs, symptoms, findings, evaluations, assessments, examinations, test results, study results, observations and/or monitoring;

s.      Failing to timely, properly and/or adequately assess, determine, test for, diagnose and/or monitor fetal well-being;

t.      Failing to timely, properly and/or adequately order, administer, review, interpret, recommend and/or report on appropriate ultrasound imaging regarding Ms. Jarvis and/or her fetus;

u.      Failing to timely, properly and/or adequately recommend, order and/or perform follow-up testing, examinations and/or care for Ms. Jarvis and/or her fetus;

v.      Failing to timely, properly and/or adequately assess, recognize, diagnose and/or treat the conditions from which Ms. Jarvis and/or her fetus suffered;

w.      Failing to timely, properly and/or adequately consider, order, recommend and/or perform medical, surgical and/or operative procedures in light of Ms. Jarvis's clinical status, past and present history, complaints, signs, symptoms and/or related findings, as well as with respect to those of her fetus;

x.      Failing to timely, properly and/or adequately assess, diagnose, interpret, treat and/or respond to Ms. Jarvis's labor and the patterns and significance thereof;

y.      Improperly ordering, recommending and/or performing the induction and/or augmentation labor;

z.      Improperly ordering, recommending, using and/or dosing magnesium sulfate

under the circumstances;

aa.   Failing to timely, properly and/or adequately use magnesium sulfate ;

bb.   Failing to timely, properly and/or adequately reduce and/or discontinue use of magnesium sulfate;

cc.   Failing to timely, properly and/or adequately take preparatory measures to manage and/or avoid fetal asphyxia and/or distress;

dd.   Failing to timely, properly and/or adequately alert other physicians and nurses that their immediate assistance would be needed to deliver M.J. safely;

ee.   Failing to timely, properly and/or adequately deliver and/or take steps to deliver M.J. safely and by a proper and safe mode once his fetal heart rate deteriorated;

ff.   Failing to timely, properly and/or adequately deliver and/or take steps to deliver safely M.J.;

gg.   Using or applying improper and/or excessive forces and methods to achieve the delivery of M.J.;

hh.   Failing to timely, properly and/or adequately call for assistance under the circumstances;

ii.   Failing to timely, properly and/or adequately obtain appropriate consultations for Ms. Jarvis and/or her fetus;

jj.   Failing to timely, properly and/or adequately insure and maintain appropriate scheduling, continuity of care and communication regarding the medical and/or nursing care of Ms. Jarvis and her fetus;

kk.   Failing to timely, properly and/or adequately communicate to other physicians

17

and nurses regarding applicable clinical status, history, examinations, test results, signs, symptoms, conditions, diagnoses and/or plans of care;

ll.    Failing to timely, properly and/or adequately request and/or obtain appropriate personnel to provide needed medical and/or nursing treatment for Ms. Jarvis;

mm.    Failing to timely, properly and/or adequately request and/or obtain appropriate personnel to provide needed medical and/or nursing treatment for M.J. at and about the time of his delivery;

nn.    Failing to timely, properly and/or adequately avail themselves of available information, test results, films, studies, opinions, diagnoses and materials regarding Ms. Jarvis and her fetus;

oo.    Failing to timely, properly and/or adequately become knowledgeable or otherwise aware of the developing and/or changing clinical/medical picture relating to Ms. Jarvis and/or her fetus;

pp.    Failing to timely, properly and/or adequately give significance to the findings and/or diagnoses of other physicians and/or nurses involved in the care and treatment of Ms. Jarvis and/or her fetus;

qq.    Failing to timely, properly and/or adequately supervise and/or instruct residents, nursing staff and/or other personnel with regard to the care provided to Ms. Jarvis and/or her fetus;

rr.    Failing to timely, properly and/or adequately document the care and/or treatment of Ms. Jarvis and/or her fetus;

ss.    Failing to timely, properly and/or adequately assess, respond to, interpret and/or diagnose maternal and/or fetal status and/or well-being via electronic

monitoring, including, but not limited to, an internal scalp electrode and/or intrauterine pressure catheter;

tt.   Improperly using forceps and traction under the circumstances;

uu.   Failing to timely, properly and/or adequately use forceps under the circumstances;

vv.   Failing to timely, properly and/or adequately order and/or administer appropriate prenatal and/or perinatal studies and/or testing of Ms. Jarvis and/or her fetus;

ww.   Failing to timely, properly and/or adequately recognize, respond to, interpret and/or diagnose the results of prenatal and/or perinatal testing and/or studies;

xx.   Failing to timely, properly and/or adequately exercise that degree of skill, care and treatment, and/or possess that degree of knowledge ordinarily possessed and exercised by other members of his or her profession and business under the specific circumstances of the medical care noted aforesaid;

yy.   Failing to timely, properly and/or adequately promulgate, enforce, communicate and/or adhere to pertinent and applicable medical, hospital, accreditation, state and/or federal standards, rules, regulations, policies, procedures and/or protocols, such as those concerning: continuity in care; examination, evaluation, assessment, observation, testing, monitoring and care of patients such as Ms. Jarvis and her fetus; timely delivery of patients such as M.J.; availability, placement, repair, maintenance and functioning of medical equipment; monitoring of fetal heart tones; monitoring of uterine contractions; the diagnosis, care and treatment of fetal distress; the diagnosis, care and

treatment of fetal asphyxia; requesting, recommending and/or ordering consultations for patients such as Ms. Jarvis and her fetus; timely, properly and adequately performing, interpreting, responding to and reporting on tests, observations, studies, and examinations to aid in the diagnosis and treatment of such patients; timely, adequate and proper delivery of patients such as M.J.; timely, adequate and proper performance of cesarean section deliveries; complete, proper and timely medical charting; day time and on-call responsibilities and staffing; scheduling of deliveries; physician availability for and during labors and deliveries; and presence of sufficient staff to attend to labors and deliveries at the hospital;

zz. Failing to timely, properly and/or adequately maintain and insure sufficient numbers of healthcare personnel to appropriately and timely monitor, tend to, assess and treat Ms. Jarvis and/or her fetus;

aaa. Violating JCAHO and Hospital or corporate standards, policies, procedures, protocols and/or regulations and pertinent governmental standards and regulations with regard to patient care and medical documentation under the circumstances;

bbb. Increasing the risk of harm to Ms. Jarvis and M.J., a minor, as a result of the negligence and/or carelessness as described herein.

WHEREFORE, Plaintiff, M.J., a minor, by and through his parent and natural guardian, Bianca Jarvis, demands judgment in his favor and against the defendants, Christian Macedonia, M.D., and Lori A. Picco, M.D., individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, attorney's fees and such other and further relief as

this Court may deem just.

## COUNT II
## NEGLIGENCE
### Plaintiff v. Defendant, Phyllis M. Rattey, R.N.

118.   Plaintiff incorporates the above paragraphs by reference as if fully set forth herein at length.

119.   The aforesaid injuries and damages of Plaintiffs were caused by the individual, joint, several and/or alternative negligence and carelessness of defendant, Phyllis M. Rattey, R.N., which consisted of the following:

    a.    Failing to timely, properly and/or adequately consider, advocate for and/or recommend a cesarean section and/or sooner delivery in light of Ms. Jarvis's clinical status, past and present history, complaints, signs, symptoms and/or related findings, as well as with respect to those of her fetus;

    b.    Improperly evaluating, interpreting and/or assessing the significance of M.J.'s fetal heart rates and their impact on his delivery and/or well-being;

    c.    Improperly proceeding and/or agreeing to proceed with a vaginal delivery given the patients' clinical status, complaints, signs, symptoms, findings, evaluations, assessments, examinations, test results, study results, observations and/or monitoring;

    d.    Reaching improper nursing diagnoses and/or treatment plans in light of the clinical status, past and present history, examination results, test and study results, and/or conditions of Ms. Jarvis and/or her fetus;

    e.    Unnecessarily delaying the diagnosis, care and/or treatment of Ms. Jarvis and/or the diagnosis, care, treatment and/or delivery of her fetus;

f.  Failing to timely, properly and/or adequately recognize, consider, avoid, assess and/or diagnose (from a nursing perspective) the possibility of fetal bradycardia and/or distress in light of the clinical status, past and present history, complaints, study and test results, signs, symptoms and/or related findings of Ms. Jarvis and/or her fetus;

g.  Failing to timely, properly and/or adequately diagnose, from a nursing perspective, the fetus as being at risk for and/or suffering fetal bradycardia, distress and/or neurologic injury;

h.  Failing to timely, properly and/or adequately recognize the risk associated with not timely, properly and/or adequately delivering Ms. Jarvis' fetus;

i.  Failing to timely, properly, and/or adequately assess, monitor, diagnose, interpret, treat and/or respond to Ms. Jarvis' contractions and/or cervical change and the patterns and significance thereof, as well as the clinical symptoms of her fetus, under the circumstances;

j.  Failing to timely, properly and/or adequately assess, monitor, diagnose, interpret, treat and/or respond to Ms. Jarvis' complaints of pain, cramping and/or pressure and the patterns and significance thereof under the circumstances;

k.  Failing to timely, properly and/or adequately assess, monitor, diagnose, interpret, treat and/or respond to the fetal heart rate of Ms. Jarvis' fetus, and the patterns and significance thereof under the circumstances;

l.     Failing to timely, properly and/or adequately request, recommend, advocate for and/or perform continuous electronic fetal heart rate and/or contraction monitoring under the circumstances;

m.    Failing to timely come to and/or remain at Ms. Jarvis' bedside at the hospital to assess, diagnose, care for and/or treat her and/or her fetus and/or to advocate for a physician to do so;

n.     failing to timely, properly and/or adequately assess, diagnose, interpret, treat and/or respond to Ms. Jarvis's labor and the patterns and significance thereof;

o.     Failing to timely, properly and/or adequately prepare for delivery;

p.     Improperly agreeing to, recommending and/or assisting in a vaginal delivery of M.J. with forceps and traction under the circumstances;

q.     Failing to timely, properly and/or adequately determine, note, evaluate and/or consider Ms. Jarvis's past and present medical history, examinations, test results, signs, symptoms, conditions, diagnoses, and/or plans of care;

r.     Failing to timely, properly and/or adequately recognize, interpret, diagnose and/or respond to the significance of the patients' clinical status, complaints, signs, symptoms, findings, evaluations, assessments, examinations, test results, study results, observations and/or monitoring;

s.     Failing to timely, properly and/or adequately assess, determine, test for, diagnose and/or monitor fetal well-being;

t.     Failing to timely, properly and/or adequately request, administer, review, interpret, recommend and/or report on appropriate ultrasound imaging regarding Ms. Jarvis and/or her fetus;

u.   Failing to timely, properly and/or adequately recommend, advocate for and/or perform follow-up testing, examinations and/or care for Ms. Jarvis and/or her fetus;

v.   Failing to timely, properly and/or adequately assess, recognize, diagnose and/or treat the conditions from which Ms. Jarvis and/or her fetus suffered;

w.   Failing to timely, properly and/or adequately consider, advocate for and/or recommend medical, surgical and/or operative procedures in light of Ms. Jarvis's clinical status, past and present history, complaints, signs, symptoms and/or related findings, as well as with respect to those of her fetus;

x.   Failing to timely, properly and/or adequately assess, diagnose, interpret, treat and/or respond to Ms. Jarvis's labor and the patterns and significance thereof;

y.   Improperly allowing, recommending and/or assisting in the induction and/or augmentation labor;

z.   Improperly allowing, admistering, recommending, using and/or dosing magnesium sulfate under the circumstances;

aa.   Failing to timely, properly and/or adequately use magnesium sulfate ;

bb.   Failing to timely, properly and/or adequately reduce and/or discontinue use of magnesium sulfate and/or advocate for same;

cc.   Failing to timely, properly and/or adequately take preparatory measures to manage and/or avoid fetal asphyxia and/or distress;

dd.   Failing to timely, properly and/or adequately alert other physicians and nurses that their immediate assistance would be needed to deliver M.J. safely;

ee.   Failing to timely, properly and/or adequately advocate for the delivery of M.J.

safely and by a proper and safe mode once his fetal heart rate deteriorated;

ff.   Failing to timely, properly and/or adequately call for assistance under the circumstances;

gg.   Failing to timely, properly and/or adequately obtain and/or advocate for appropriate consultations for Ms. Jarvis and/or her fetus;

hh.   Failing to timely, properly and/or adequately insure and maintain appropriate scheduling, continuity of care and communication regarding the medical and/or nursing care of Ms. Jarvis and her fetus;

ii.   Failing to timely, properly and/or adequately communicate to other physicians and nurses regarding applicable clinical status, history, examinations, test results, signs, symptoms, conditions, diagnoses and/or plans of care;

jj.   Failing to timely, properly and/or adequately request and/or obtain appropriate personnel to provide needed medical and/or nursing treatment for Ms. Jarvis;

kk.   Failing to timely, properly and/or adequately request and/or obtain appropriate personnel to provide needed medical and/or nursing treatment for M.J. at and about the time of his delivery;

ll.   Failing to timely, properly and/or adequately avail herself of available information, test results, films, studies, opinions, diagnoses and materials regarding Ms. Jarvis and her fetus;

mm.   Failing to timely, properly and/or adequately become knowledgeable or otherwise aware of the developing and/or changing clinical/medical picture relating to Ms. Jarvis and/or her fetus;

nn.   Failing to timely, properly and/or adequately give significance to the findings

and/or diagnoses of other physicians and/or nurses involved in the care and

treatment of Ms. Jarvis and/or her fetus;

oo. Failing to timely, properly and/or adequately supervise and/or instruct

residents, nursing staff and/or other personnel with regard to the care provided

to Ms. Jarvis and/or her fetus;

pp. Failing to timely, properly and/or adequately document the care and/or

treatment of Ms. Jarvis and/or her fetus;

qq. Failing to timely, properly and/or adequately assess, respond to, interpret

and/or diagnose maternal and/or fetal status and/or well-being via electronic

monitoring, including, but not limited to, an internal scalp electrode and/or

intrauterine pressure catheter;

rr. Failing to timely, properly and/or adequately order and/or administer

appropriate prenatal and/or perinatal studies and/or testing of Ms. Jarvis

and/or her fetus;

ss. Failing to timely, properly and/or adequately recognize, respond to, interpret

and/or diagnose the results of prenatal and/or perinatal testing and/or studies;

tt. Failing to timely, properly and/or adequately exercise that degree of skill, care

and treatment, and/or possess that degree of knowledge ordinarily possessed

and exercised by other members of her profession and business under the

specific circumstances of the medical care noted aforesaid;

uu. Failing to timely, properly and/or adequately promulgate, enforce,

communicate and/or adhere to pertinent and applicable medical, hospital,

accreditation, state and/or federal standards, rules, regulations, policies,

procedures and/or protocols, such as those concerning: continuity in care; examination, evaluation, assessment, observation, testing, monitoring and care of patients such as Ms. Jarvis and her fetus; timely delivery of patients such as M.J.; availability, placement, repair, maintenance and functioning of medical equipment; monitoring of fetal heart tones; monitoring of uterine contractions; the diagnosis, care and treatment of fetal distress; the diagnosis, care and treatment of fetal asphyxia; requesting, recommending and/or ordering consultations for patients such as Ms. Jarvis and her fetus; timely, properly and adequately performing, interpreting, responding to and reporting on tests, observations, studies, and examinations to aid in the diagnosis and treatment of such patients; timely, adequate and proper delivery of patients such as M.J.; timely, adequate and proper performance of cesarean section deliveries; complete, proper and timely medical charting; day time and on-call responsibilities and staffing; scheduling of deliveries; physician availability for and during labors and deliveries; and presence of sufficient staff to attend to labors and deliveries at the hospital;

vv.    Failing to timely, properly and/or adequately maintain and insure sufficient numbers of healthcare personnel to appropriately and timely monitor, tend to, assess and treat Ms. Jarvis and/or her fetus;

ww.    Violating JCAHO and Hospital or corporate standards, policies, procedures, protocols and/or regulations and pertinent governmental standards and regulations with regard to patient care and medical documentation under the circumstances;

xx.    Increasing the risk of harm to Ms. Jarvis and M.J., a minor, as a result of the

negligence and/or carelessness as described herein.

WHEREFORE, Plaintiff, M.J., a minor, by and through his parent and natural guardian,

Bianca Jarvis, demands judgment in his favor and against the defendant, Phyllis M. Rattey, R.N.,

individually, jointly, severally and/or in the alternative, for compensatory damages, interest,

costs of suit, attorney's fees and such other and further relief as this Court may deem just.

## COUNT III – NEGLIGENCE
### Plaintiffs v. Defendants, Georgetown University Medical Center, individually and/or doing business as Georgetown University Hospital and Georgetown University Hospital

120.    Plaintiff incorporates by reference the above paragraphs as if fully set forth herein

at length.

121.    The aforesaid injuries and damages were caused by the individual, joint, several

and/or alternative negligence and carelessness of defendants, Georgetown University Medical

Center, individually and/or doing business as Georgetown University Hospital and Georgetown

University Hospital, which consisted of the following:

a.    Failing to timely, properly and/or adequately adopt, promulgate, abide by

and/or enforce appropriate rules, regulations, systems, by-laws, policies and

procedures with regard to examining, evaluating, medicating, assessing,

diagnosing, treating, caring for, following up with and/or monitoring pregnant

patients and/or their fetuses such as Ms. Jarvis and her fetus;

b.    Failing to timely, properly and/or adequately adopt, promulgate, abide by

and/or enforce appropriate rules, regulations, systems, by-laws, policies and

procedures with regard to continuity in care and the chain of command;

c.    Failing to timely, properly and/or adequately adopt, promulgate, abide by

and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to availability, placement, use of, repair, maintenance and functioning of medical equipment;

d.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to preparing for and/or managing a preterm delivery;

e.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to determining, evaluating, assessing, and/or monitoring fetal well-being and/or the proper and timely delivery of a fetus;

f.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to recognizing, determining, evaluating, assessing, and/or monitoring the presence of a fetal asphyxia, distress and/or other injury;

g.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to requesting, recommending and/or ordering consultations for patients such as Ms. Jarvis and her fetus;

h.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to performing, interpreting, responding to and reporting on tests, observations, studies, and examinations to aid in the

diagnosis and treatment of patients such as Ms. Jarvis and her fetus;

i.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to timely and proper delivery of patients such as M.J.;

j.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to timely and proper recommending, ordering and/or performing cesarean section deliveries;

k.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to the proper use of forceps and/or traction;

l.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to complete, proper and timely medical charting;

m.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures as indicated and required by state law, federal law, and/or institutional and accrediting entities or agencies;

n.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to ordering, using or administering magnesium sulfate;

o.    Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and

procedures with regard to shoulder dystocia, the risk factors associated with fetal bradycardia and/or fetal asphyxia, and how to prepare for, diagnose, treat and manage the condition;

p.     Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard attending physician responsibilities for laboring patients and/or with regard to obstetric on-call responsibilities;

q.     Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to continuing availability of obstetricians to perform deliveries of babies such as M.J.;

r.     Failing to timely, properly and/or adequately adopt, promulgate, abide by and/or enforce appropriate rules, regulations, systems, by-laws, policies and procedures with regard to insuring and maintaining appropriate scheduling, continuity of care and communication regarding the medical and/or nursing care of patients such as Ms. Jarvis and her fetus;

s.     Failing to timely, properly and/or adequately promulgate, enforce, communicate and/or adhere to pertinent and applicable medical, hospital, accreditation, state and/or federal standards, rules, regulations, policies, procedures and/or protocols, such as those concerning: continuity in care; examination, evaluation, assessment, observation, testing, monitoring and care of patients such as Ms. Jarvis and her fetus; timely delivery of patients such as M.J.; availability, placement, repair, maintenance and  functioning of medical

equipment; monitoring of fetal heart tones; monitoring of uterine contractions; the diagnosis, care and treatment of fetal distress; the diagnosis, care and treatment of fetal asphyxia; requesting, recommending and/or ordering consultations for patients such as Ms. Jarvis and her fetus; timely, properly and adequately performing, interpreting, responding to and reporting on tests, observations, studies, and examinations to aid in the diagnosis and treatment of such patients; timely, adequate and proper delivery of patients such as M.J.; timely, adequate and proper performance of cesarean section deliveries; complete, proper and timely medical charting; day time and on-call responsibilities and staffing; scheduling of deliveries; physician availability for and during labors and deliveries; and presence of sufficient staff to attend to labors and deliveries at the hospital;

t.    Failing to timely, properly and/or adequately select, train and supervise its doctors and nurses, including defendants, Dr. Macedonia and Dr. Picco and/or other physicians or nurses identified in the medical records pertaining to plaintiffs;

u.    Failing to timely, properly and/or adequately have in place medical and nursing review procedures so that they could obtain knowledge regarding the performance of its doctors and nurses, including, for example, those identified herein and/or in the medical records pertaining to plaintiffs, and their compliance with established hospital procedures;

v.    Failing to timely, properly and/or adequately discharge its doctors and nurses, including, for example, those identified herein and/or in the medical records

pertaining to plaintiffs, whose services and skills fell below the general

recognized standards of acceptable medical and nursing services and/or skills;

w.    Failing to require, monitor and/or enforce continuing education for its doctors

and nurses, including defendants, Dr. Macedonia and Dr. Picco and/or other

individuals identified in its medical records pertaining to Plaintiffs, thereby

enabling the defendant doctors to improperly treat Plaintiffs and others

similarly situated due to deficient knowledge;

x.    Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately consider, order, recommend and/or perform a cesarean section

and/or sooner delivery in light of Ms. Jarvis's clinical status, past and present

history, complaints, signs, symptoms and/or related findings, as well as with

respect to those of her fetus;

y.    Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there were improper evaluations,

interpretations and/or assessments of the significance of M.J.'s fetal heart

rates and their impact on his delivery and/or well-being;

z.    Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that defendant Doctors improperly proceeded with

a vaginal delivery given the patients' clinical status, complaints, signs,

symptoms, findings, evaluations, assessments, examinations, test results, study results, observations and/or monitoring;

aa.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that defendant Doctors reached an improper diagnoses and/or treatment plans in light of the clinical status, past and present history, examination results, test and study results, and/or conditions of Ms. Jarvis and/or her fetus;

bb.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was an unnecessary delay the diagnosis, care and/or treatment of Ms. Jarvis and/or the diagnosis, care, treatment and/or delivery of her fetus;

cc.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately recognize, consider, avoid, assess and/or diagnose the possibility of fetal bradycardia and/or distress in light of the clinical status, past and present history, complaints, study and test results, signs, symptoms and/or related findings of Ms. Jarvis and/or her fetus;

dd.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or

adequately diagnose the fetus as being at risk for and/or suffering fetal

bradycardia, distress and/or neurologic injury;

ee.     Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly, and/or

adequately assess, monitor, diagnose, interpret, treat and/or respond to Ms.

Jarvis' contractions and/or cervical change and the patterns and significance

thereof, as well as the clinical symptoms of her fetus, under the circumstances;

ff.     Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately assess, monitor, diagnose, interpret, treat and/or respond to Ms.

Jarvis' complaints of pain, cramping and/or pressure and the patterns and

significance thereof under the circumstances;

gg.     Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately assess, monitor, diagnose, interpret, treat and/or respond to the

fetal heart rate of Ms. Jarvis' fetus, and the patterns and significance thereof

under the circumstances;

hh.     Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately request, order, recommend, and/or perform continuous electronic fetal heart rate and/or contraction monitoring under the circumstances;

ii.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely come to and/or remain at Ms. Jarvis' bedside at the hospital to assess, diagnose, care for and/or treat her and/or her fetus;

jj.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately assess, diagnose, interpret, treat and/or respond to Ms. Jarvis's labor and the patterns and significance thereof;

kk.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately prepare for delivery;

ll.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was an improper ordering, recommending and/or performing of a vaginal delivery of M.J. with forceps and traction under the circumstances.

mm.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or adequately determine, note, evaluate and/or consider Ms. Jarvis's past and present medical history, examinations, test results, signs, symptoms, conditions, diagnoses, and/or plans of care;

nn.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately recognize, interpret, diagnose and/or respond to the significance of the patients' clinical status, complaints, signs, symptoms, findings, evaluations, assessments, examinations, test results, study results, observations and/or monitoring;

oo.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately assess, determine, test for, diagnose and/or monitor fetal well-being;

pp.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately order, administer, review, interpret, recommend and/or report on appropriate ultrasound imaging regarding Ms. Jarvis and/or her fetus;

qq.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or adequately recommend, order and/or perform follow-up testing, examinations and/or care for Ms. Jarvis and/or her fetus;

rr.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately assess, recognize, diagnose and/or treat the conditions from which Ms. Jarvis and/or her fetus suffered;

ss.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately consider, order, recommend and/or perform medical, surgical and/or operative procedures in light of Ms. Jarvis's clinical status, past and present history, complaints, signs, symptoms and/or related findings, as well as with respect to those of her fetus;

tt.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately assess, diagnose, interpret, treat and/or respond to Ms. Jarvis's labor and the patterns and significance thereof;

uu.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that defendant Doctors improperly ordered,

recommended and/or performed the induction and/or augmentation labor;

vv.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that defendant Doctors improperly ordered, recommended, used and/or dosed magnesium sulfate under the circumstances;

ww.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately use magnesium sulfate;

xx.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately reduce and/or discontinue use of magnesium sulfate;

yy.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately take preparatory measures to manage and/or avoid fetal asphyxia and/or distress;

zz.  Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately alert other physicians and nurses that their immediate assistance would be needed to deliver M.J. safely;

aaa.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately deliver and/or take steps to deliver M.J. safely and by a proper and safe method once his fetal heart rate deteriorated;

bbb.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately deliver and/or take steps to deliver safely M.J.;

ccc.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that defendant Doctors used or applied improper and/or excessive forces and methods to achieve the delivery of M.J.;

ddd.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately call for assistance under the circumstances;

eee.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately obtain appropriate consultations for Ms. Jarvis and/or her fetus;

fff.    Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or adequately insure and maintain appropriate scheduling, continuity of care and communication regarding the medical and/or nursing care of Ms. Jarvis and her fetus;

ggg.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately communicate to other physicians and nurses regarding applicable clinical status, history, examinations, test results, signs, symptoms, conditions, diagnoses and/or plans of care;

hhh.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately request and/or obtain appropriate personnel to provide needed medical and/or nursing treatment for Ms. Jarvis;

iii.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately request and/or obtain appropriate personnel to provide needed medical and/or nursing treatment for M.J. at and about the time of his delivery;

jjj.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls

41

and ensure patient safety in that there was a failure to timely, properly and/or

adequately avail themselves of available information, test results, films,

studies, opinions, diagnoses and materials regarding Ms. Jarvis and her fetus;

kkk.   Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately become knowledgeable or otherwise aware of the developing

and/or changing clinical/medical picture relating to Ms. Jarvis and/or her

fetus;

lll.   Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately give significance to the findings and/or diagnoses of other

physicians and/or nurses involved in the care and treatment of Ms. Jarvis

and/or her fetus;

mmm.  Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately supervise and/or instruct residents, nursing staff and/or other

personnel with regard to the care provided to Ms. Jarvis and/or her fetus;

nnn.   Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately document the care and/or treatment of Ms. Jarvis and/or her fetus;

ooo.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately assess, respond to, interpret and/or diagnose maternal and/or fetal status and/or well-being via electronic monitoring, including, but not limited to, an internal scalp electrode and/or intrauterine pressure catheter;

ppp.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to properly use forceps and traction under the circumstances;

qqq.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately use forceps under the circumstances;

rrr.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or adequately order and/or administer appropriate prenatal and/or perinatal studies and/or testing of Ms. Jarvis and/or her fetus;

sss.   Failing to timely, properly and/or adequately train, supervise and/or oversee all persons who practice nursing, medicine and/or surgery within their walls and ensure patient safety in that there was a failure to timely, properly and/or

adequately recognize, respond to, interpret and/or diagnose the results of

prenatal and/or perinatal testing and/or studies;

ttt.    Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately exercise that degree of skill, care and treatment, and/or possess

that degree of knowledge ordinarily possessed and exercised by other

members of his or her profession and business under the specific

circumstances of the medical care noted aforesaid;

uuu.    Failing to timely, properly and/or adequately train, supervise and/or oversee

all persons who practice nursing, medicine and/or surgery within their walls

and ensure patient safety in that there was a failure to timely, properly and/or

adequately maintain and insure sufficient numbers of healthcare personnel to

appropriately and timely monitor, tend to, assess and treat Ms. Jarvis and/or

her fetus;

vvv.    Violating JCAHO and Hospital or corporate standards, policies, procedures,

protocols and/or regulations and pertinent governmental standards and

regulations with regard to patient care and medical documentation under the

circumstances;

www.   Increasing the risk of harm to Ms. Jarvis and M.J., a minor, as a result of the

negligence and/or carelessness as described herein.

xxx.    Being vicariously liable for the acts and omissions of their respective

personnel as described herein, as well as of the health care providers listed in

defendants' respective medical records pertaining to M.J., a minor and/or his mother, Bianca Jarvis, and in that regard Plaintiff incorporates herein by reference subparagraphs (a) through (bbb) of paragraph 117 and subparagraphs (a) through (xx) of paragraph 119.

WHEREFORE, Plaintiff, M.J., a minor, by and through his parent and natural guardian, Bianca Jarvis, demands judgment in his favor and against the defendants, Georgetown University Medical Center, individually and/or doing business as Georgetown University Hospital and Georgetown University Hospital, individually, jointly, severally and/or in the alternative, for compensatory damages, interest, costs of suit, attorney's fees and such other and further relief as this Court may deem just.

Respectfully submitted,

VILLARI, BRANDES & GIANNONE, P.C.

Dated: 11/6/2012                    By: _____

Peter M. Villari, Esquire # 973890
Villari, Brandes & Giannone, P.C.
8 Tower Bridge
161 Washington Street
Suite 400
Conshohocken
(610) 729-2900
pvillari@villarilaw.com
*Attorney for Plaintiffs*

## JURY DEMAND

Plaintiff hereby requests a trial by jury as to all issues identified in the above Complaint.

Respectfully submitted,

VILLARI, BRANDES & GIANNONE, P.C.

Dated: _12/6/12_                    By: _____

Peter M. Villari, Esquire # 973890
Villari, Brandes & Giannone, P.C.
8 Tower Bridge
161 Washington Street
Suite 400
(610) 729-2900
pvillari@villarilaw.com
*Attorney for Plaintiffs*

46