UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.J., a minor, by and through :
Bianca Jarvis, his parent and :
natural guardian, :
:
:
Plaintiffs, :
: Civil Action No. 13-283 (GK)
v. :
:
Georgetown University Medical :
Center, et al., :
:
Defendants. :
:

## MEMORANDUM OPINION

Plaintiff Bianca Jarvis ("Jarvis" or "Plaintiff") brings this medical malpractice action, on behalf of her minor son, M.J., against the Georgetown University Medical Center, Georgetown University Hospital, Lori A. Picco, M.D., and Phyllis M. Rattey, R.N. (collectively, the "Georgetown Defendants"), and the United States of America (the "Government").

This matter is before the Court on the Government's Motion to Dismiss [Dkt. No. 5]. Upon consideration of the Motion, Opposition [Dkt. No. 12], and Reply [Dkt. No. 16], the entire record herein, and for the reasons stated below, the Government's Motion is **granted.**

## I. BACKGROUND[1]

### A. Factual Background

On November 1, 1998, Jarvis was admitted to the Georgetown University Hospital twenty-five weeks pregnant with complaints of "abdominal spasms and spontaneous rupture of membranes." Compl. ¶ 16. Over the next several days, she was monitored so that her baby could be "timely delivered in the event of infection and/or fetal distress." Compl. ¶¶ 17-68. On November 6, 1998, Jarvis went into labor. Compl. ¶¶ 69-74. The attending physicians determined that her fetus should be delivered via cesarean section, but after administering an epidural, they found that she was completely dilated and "decided to forego the cesarean section and proceed with a vaginal delivery." Compl. ¶¶ 95, 99-101. During the delivery, a sonogram of the fetus indicated "terminal fetal bradycardia." Compl. ¶ 103.[2] Forceps and traction were then used to extract the fetus. Compl. ¶ 105.

---

[1] The facts and relevant background are taken from the Complaint [Dkt. No. 1-1], the Government's Certification Pursuant to 28 U.S.C. § 2679 [Dkt. No. 1-2], and the exhibits and declarations appended to the parties' briefs. [Dkt. Nos. 5-2, 12-1].

[2] Bradycardia is a slow heart rate. See STEDMAN'S MEDICAL DICTIONARY ["STEDMAN'S"] 54300 (27th ed. 2000). Less than 100 beats per minute is considered to be bradycardia in a fetus. Id.

M.J. was born on November 7, 1998, at 12:27 a.m. Upon delivery, he "was blue, with no respiratory effort or heart rate[,]" and had "extensive bruising on his head, neck and chest." Compl. ¶¶ 106-07. Following delivery, M.J. was diagnosed with "perinatal asphyxia, respiratory distress syndrome, and extreme prematurity," and was admitted to the neonatal intensive care unit, where he remained for sixteen weeks. Compl. ¶¶ 108-110.[3] M.J. now suffers from permanent brain damage, orthopedic injuries, global developmental delay, and other complications, which Plaintiff attributes to the timing and method of M.J.'s delivery, specifically Defendants' decision to deliver M.J. vaginally rather than by cesarean section. See Compl. ¶¶ 112, 117, 119.

**B.    Procedural Background**

On January 2, 2013, more than 14 years after M.J.'s birth, Jarvis filed this medical malpractice action in District of Columbia Superior Court. The case was initially brought against the Georgetown Defendants and Dr. Christian Macedonia, one of the doctors involved in M.J.'s delivery. On March 4, 2013, the Government substituted itself as a party defendant on behalf of

---

[3] Asphyxia is oxygen deprivation resulting from the "[i]mpaired or absent exchange of oxygen and carbon dioxide on a ventilatory basis." See STEDMAN'S at 34810.

Dr. Macedonia, and removed the case to this Court pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679. According to the removal papers, at the time of M.J.'s delivery, Dr. Macedonia was a federal employee, serving as a Major in the United States Army and completing a fellowship at Georgetown University Hospital. Plaintiff's claim against Dr. Macedonia is therefore deemed to be an action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). See 28 U.S.C. § 2679(d). Dr. Macedonia was dismissed as a defendant on April 10, 2013.

On March 20, 2013, the Government moved to dismiss Plaintiff's FTCA claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction [Dkt. No. 5]. On April 3, 2013, Plaintiff filed her Opposition [Dkt. No. 12], and on May 15, 2013, the Government filed a Reply [Dkt. No. 16].

II.  **STANDARD OF REVIEW**

Under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008). In deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must

"accept all of the factual allegations in [the] complaint as true[.]" Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (citing United States v. Gaubert, 499 U.S. 315, 327 (1991)) (quotation marks omitted). The Court may also consider matters outside the pleadings, and it may rest its decision on its own resolution of disputed facts. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).[4]

## III. ANALYSIS

### A. The Federal Tort Claims Act

It is basic hornbook law that the United States, as sovereign, is immune from suit unless it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). By enacting the FTCA, Congress partially waived the Government's sovereign immunity for claims of "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

---

[4] The parties refer to the difference between a "factual challenge" and a "facial challenge" to subject matter jurisdiction. See Gov't's Mot. at 2; Pl.'s Opp'n at 3. While the Court does not find explicit support for this dichotomy in D.C. Circuit case law, the distinction between the two types of motions is not material to resolving this Motion. The important point is that, while the Court may consider materials outside of the pleadings, it still accepts the factual allegations in the Complaint as true. See Jerome Stevens Pharmaceuticals, Inc., 402 F.3d at 1253-54.

employment." 28 U.S.C. § 1346(b). However, Congress conditioned such waiver on the requirement that a plaintiff present her claim "in writing to the appropriate Federal agency within two years after such claim accrues," and thereafter file her action in court within six months of agency's final denial of her claim. 28 U.S.C. § 2401(b).

Under the Westfall Act, the FTCA is the exclusive mechanism by which a plaintiff may seek damages for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Where, as in this case, a plaintiff has originally sued the employee in his or her individual capacity, the Westfall Act deems the action to be one against the Government under the FTCA, and requires the Government to be substituted as party defendant in the employee's place. See 28 U.S.C. § 2679(d)(2).

Because substitution of the United States as a party might occur long after the FTCA's two-year limitations period has expired, the Westfall Act contains a "savings provision" for actions initially brought against an individual Government employee, subsequently converted into an FTCA claim against the Government, and thereafter dismissed for failure to file an

administrative claim.  See Mittleman v. United States, 104 F.3d 410, 413 (D.C. Cir. 1997) (citing 28 U.S.C. § 2679(d)(5)(A)). In such cases, the savings clause provides a 60-day grace period for the plaintiff to file her claim with the appropriate agency, but only if such "claim would have been timely had it been filed on the date the underlying civil action was commenced[.]"  28 U.S.C. § 2679(d)(5).  Otherwise, a claim not timely presented to the appropriate federal agency is "forever barred."  28 U.S.C. § 2401(b); Mittleman, 104 F.3d at 413.

**B.    Plaintiff's Claim Is Time-Barred**

It is undisputed that Jarvis did not file an administrative claim before commencing this case.  See Def.'s Mem. at 4 & Ex. 2 (Decl. of Major Linda A. Chapman); Pl.'s Opp'n at 5.   The parties dispute, however, whether she may exhaust her administrative remedies now that she is aware of Dr. Macedonia's previous status as a federal employee.    According to the Government, Plaintiff's claim is barred by the FTCA's two-year statute of limitations.   Plaintiff counters that her claim is not time-barred because it did not accrue until this year, and in the alternative, that equitable tolling should apply to permit her case to proceed.

## 1. M.J.'s Claim Accrued in 1998

Plaintiff first argues that M.J.'s claim did not accrue until March 2013, when she learned of Dr. Macedonia's status as a Government employee. Pl.'s Opp'n at 6-7. The Government contends that M.J.'s claim accrued on M.J.'s date of birth, when Jarvis learned of the injuries she now attributes to the Government. Reply at 7-11.

Accrual of a claim under the FTCA is governed by federal law. See Sexton v. United States, 832 F.2d 629, 633 n.4 (D.C. Cir. 1987). The seminal case on FTCA medical malpractice claims is Kubrick v. United States, 444 U.S. 111 (1979). In Kubrick, the Supreme Court held that a medical malpractice claim accrues when the plaintiff knows "the critical facts that [s]he has been hurt and who has inflicted the injury," even if she does not know that the injury was "negligently inflicted." Kubrick, 444 U.S. at 122, 123. The Court reasoned that:

> A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

Id. at 123.

The D.C. Circuit has construed Kubrick to stand for the proposition that "a plaintiff's understanding of the basic nature of the [allegedly improper] treatment should suffice to begin the statute running." Sexton, 832 F.2d at 633. Stated differently, a medical malpractice claim accrues when the plaintiff possesses sufficient "historical facts associated with the injury" to permit her to "undertake a reasonably diligent investigation to determine whether a cause of action may lie." Id. at 633-34; see also McCullough v. United States, 607 F.3d 1355, 1359 (11th Cir. 2010) (a medical malpractice claim accrues when plaintiff "is, or in the exercise of reasonable diligence should be, aware of both [her] injury and its connection with some act of the defendant") (citation omitted).

Applying these principles to the instant case, it is undisputed that Jarvis knew of M.J.'s injuries on the day he was born. According to the Complaint, newborn M.J. was "blue with no respiratory effort or heart rate," and had "extensive bruising on his head, neck and chest." Compl. ¶¶ 106, 107. These obvious physical symptoms, and the doctors' related diagnosis of perinatal asphyxia and respiratory distress syndrome, put Jarvis on notice that M.J. had suffered an injury related to oxygen deprivation, even if she did not then know its

-9-

full extent or its future impact on M.J.'s development. See Wallace v. Kato, 549 U.S. 384, 391 (2007) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.") (citations omitted).

Jarvis also possessed sufficient information to prompt a "reasonably diligent" inquiry into whether Defendants' medical care — specifically the decision to proceed by vaginal delivery rather than cesarean section — caused M.J.'s condition. See Sexton, 832 F.2d at 633-34. It is uncontested that Dr. Picco initially informed Jarvis that M.J. would be delivered by cesarean section, before the doctors changed their minds and opted for vaginal delivery. Compl. ¶ 96; Pl.'s Opp'n, Ex. A at Consent for Surgery, Anesthetics, and Other Medical Services and Operative Report. This fact, in conjunction with M.J.'s conspicuous injuries, gave Jarvis a reasonable basis to question whether the doctors' choice was proper, and to seek further legal and medical advice on that question.

Plaintiff contends in her Opposition that her claim did not accrue in 1998 because Defendants told her that M.J.'s condition was caused by prematurity. Pl.'s Opp'n at 6. However, the Complaint itself alleges that "M.J. was diagnosed with perinatal asphyxia, respiratory distress syndrome, and extreme

-10-

prematurity." Compl. ¶ 110 (emphasis added). Under <u>Sexton</u>, the fact that an injury has multiple causes does not negate a plaintiff's duty to make a reasonable inquiry into all other potential causes once she is aware of the relevant facts underlying that cause. <u>See</u> <u>Sexton</u>, 832 F.2d at 633-34 (plaintiffs' belief that death resulted from leukemia rather than negligence did not postpone accrual where plaintiff understood "basic nature of the [allegedly negligent] treatment").

Plaintiff also argues that her FTCA claim could not accrue until she discovered the Government's involvement in M.J.'s injury. Pl.'s Opp'n at 6-7. The D.C. Circuit has not addressed such an argument, but other circuits have rejected it. <u>See, e.g.</u>, <u>Ramos v. Dep't of Health and Human Servs.</u>, 429 F. App'x 947, 951 (11th Cir. 2011) ("That [Plaintiff] did not learn until later that the government was the proper defendant does not alter [accrual] analysis."); <u>Skwira v. United States</u>, 344 F.3d 64, (1st Cir. 2003) ("In the medical malpractice context, . . . knowledge of the <u>legal</u> status of the physician as a federal

employee is not required for claim accrual.") (emphasis in original) (citing cases).[5]

Further, by including the savings clause in the Westfall Act so as to give additional time for exhaustion to plaintiffs whose state court actions would otherwise be timely, Congress already provided for circumstances in which a plaintiff is initially unaware that the Government is the proper defendant. See 28 U.S.C. § 2679(d)(5)(A).[6] There would be little need for this clause if Congress also intended a plaintiff's claim not to accrue until she knew of the Government's role in her case. Therefore, M.J.'s claim accrued in 1998 regardless of whether

---

[5] Plaintiff cites Valdez v. United States, 518 F.3d 173 (2d Cir. 2008) and Danzan v. United States, 762 F.2d 56 (7th Cir. 1985), but neither endorse the rule she urges. In Valdez, the Second Circuit merely observed that equitable tolling might apply where a plaintiff had no reason to know her medical provider was a government entity. Valdez, 518 F.3d at 178 n.2 & 182-85. In Danzan, the Seventh Circuit held that when an injury has a natural cause (in that case, cancer), and an accelerating cause attributable to the Government (negligent treatment), the FTCA claim does not accrue until a plaintiff has reason to know of the Government-related cause. Danzan, 762 F.2d at 59-60. Neither Valdez nor Danzan held that a plaintiff's claim does not accrue until she knows that the employee alleged to have caused her injury is a government employee.

[6] The savings clause does not apply in this case because Jarvis did not file her state court action until January 2013, more than fourteen years after the statute of limitations expired. 28 U.S.C. § 2679(d)(5)(A).

-12-

Jarvis had any reason to suspect that Dr. Macedonia was a federal employee.

## 2. Equitable Tolling Does Not Apply

Plaintiff also argues that even if M.J.'s claim accrued earlier, the statute of limitations should be equitably tolled because she had no reason to suspect Dr. Macedonia was a federal employee, and because her claims were otherwise timely under District of Columbia law.[7] The Government counters that the FTCA's limitations period is a prerequisite to the Court's subject matter jurisdiction, and therefore, is not subject to equitable tolling.[8] The Court need not reach that issue, however, because, as the Government also points out, Plaintiff has not made a convincing case for equitable tolling. Reply at 4-7.

Equitable tolling, where it applies, "permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on

---

[7] Under District of Columbia law, the three year statute of limitations for medical malpractice claims of minors is tolled until their eighteenth birthday. D.C. Code §§ 12-301, 12-302(a)(1).

[8] Notwithstanding this implicit dispute about whether the FTCA's limitation period is "jurisdictional," the parties agree that Rule 12(b)(1) supplies the applicable standard of review for all issues raised in this Motion. See Def.'s Mem. at 2-3; Pl.'s Opp'n at 3-4.

the existence of her claim." Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998) (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990)). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

In Norman v. United States, 467 F.3d 773, 775-76 (D.C. Cir. 2006), our Court of Appeals addressed equitable tolling in circumstances nearly identical to those presented here. The plaintiff, Norman, was hit by a rental car and filed a claim with the driver's insurance provider shortly thereafter. However, the insurance company did not inform him until two and a half years later that the driver was a federal employee acting within the scope of his employment. Norman subsequently filed his case within the District of Columbia's three-year limitations period for personal injury actions, but outside the FTCA's two-year limitations period. The District Court rejected Norman's request for equitable tolling and dismissed the case as time-barred. On appeal, the Court of Appeals declined to

-14-

address whether the FTCA limitations period may ever be equitably tolled because it concluded that, in any event, Norman "failed to meet the due diligence requirement for equitable tolling." Id. at 776.

The same conclusion holds here. Like the plaintiff in Norman, Jarvis has not identified "any efforts prior to the expiration of the FTCA's two-year statute of limitations—much less reasonably diligent efforts—to discover [Dr. Macedonia's] employer." Id. Her failure to do so is not excused simply because M.J.'s claim is otherwise timely under District of Columbia law. As the D.C. Circuit emphasized, "[i]f that were enough for equitable tolling . . . the FTCA's statute of limitations would have no bite[,]" because plaintiffs would be able to circumvent the statute by merely filing claims in a jurisdiction with a longer limitations period. Id.

In addition, the due diligence requirement for equitable tolling is not relaxed merely because Jarvis had no basis during the fourteen years that elapsed since the injury occurred to know that Dr. Macedonia worked for the Government. As the Court of Appeals observed, "if prejudice were enough, then equitable tolling would no longer be restricted to 'extraordinary and

carefully circumscribed circumstances.'" Id. at 777 (citing

Smith-Haynie, 155 F.3d at 580).[9]

Plaintiff attempts to distinguish Norman by arguing that

the plaintiff in that case had a greater reason to assume the

tortfeasor was a federal employee because "when dealing with an

automobile accident in the District of Columbia, there would be

a high likelihood that the driver was going about his business

for any one of the numerous government agencies in the area."

Pl.'s Opp'n at 11. The D.C. Circuit emphatically rejected such

an argument, observing that "[w]e think it entirely unworkable

to calibrate the required level of due diligence to the number

of federal employees living in the region where the accident

occurred." Norman, 467 F.3d at 778. Instead, "due diligence

must have the same meaning everywhere." Id. Here, as in

Norman, Plaintiff's "claim for equitable tolling fails because

at no time during the FTCA's two-year statute of limitations did

---

[9] In fact, in Norman, the D.C. Circuit concluded that equitable
tolling would not even apply if the insurance carrier had
"deliberately withheld information about [the tortfeasor's]
employment status" because Norman sought "equitable tolling
against the government, not against [the insurance company]."
Norman, 467 F.3d at 777 (emphasis added).

[s]he make any effort — diligent or otherwise - to identify [Dr. Macedonia's] employer." Id.[10]

"It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." Kubrick, 444 U.S. at 125. As the Seventh Circuit observed in Sexton,

> any statute of limitations that puts inquiry burdens on a plaintiff, as this one clearly does, . . . entails a degree of ghoulish behavior. Patients or survivors, whose instinct may well be to shut off from their minds the grim experience through which they have passed, are required instead to follow up on their leads. For persons of any sensitivity this must be a difficult or even repugnant process. Yet, to protect defendants from stale claims, legislatures put potential plaintiffs to the hard choice of proceeding with such inquiries or risking loss of possible claims.

832 F.2d at 636 (citations omitted).

The FTCA bars claimants from bringing suit in federal court unless they have presented their claim to the Government within two years of the claim's accrual. McNeil v. United States, 508 U.S. 106, 113 (1993). Jarvis never filed any administrative

---

[10] The Government argues that Plaintiff could have quickly discovered Dr. Macedonia's status as a federal employee, and cites a number of public websites listing Dr. Macedonia's affiliation with the United States Army. See Gov't's Reply at 6 n.2. Given that this information was presented for the first time in the Government's Reply, and Plaintiff did not have the opportunity to respond to it, the Court does not rely on it.

claim, and is now time barred from doing so. Accordingly, Plaintiff's claim against the Government shall be dismissed for lack of subject matter jurisdiction.

### C. The Case Shall Be Remanded to Superior Court

The claim against Dr. Macedonia was the sole basis on which the case was removed to this Court. [Dkt. No. 1]. Having concluded that the Court lacks jurisdiction over such claim, the Court shall remand the case to Superior Court.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion is **granted**, and the case shall be **remanded** to Superior Court. An Order shall accompany this Memorandum Opinion.[11]

August 22, 2013

Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF

---

[11] Plaintiff requests that if the Court determines that equitable tolling applies but still dismisses the case due to her failure to exhaust her administrative remedies, the Court should dismiss the case without prejudice. Pl.'s Opp'n at 12. Because the Court determines that equitable tolling does not apply and that Plaintiff's claims are untimely, it shall dismiss the case with prejudice.